UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORLANDO FORD,<br><br>            Petitioner,<br><br>      v.<br><br>R. GROUNDS,<br><br>            Respondent. | Case No.: 1:13-cv-00403-AWI-JLT<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1)<br><br>ORDER DIRECTING THAT OBJECTIONS BE FILED WITHIN TWENTY-ONE DAYS |

In this petition, Mr. Ford challenges the results of a 2011 disciplinary finding him guilty of possessing contraband and imposing a loss of 360 days of good time credits and 90 days loss of canteen privileges. Because Petitioner was provided adequate due process and there was some evidence to support the disciplinary hearing determination, the Court recommends the petition be **DENIED**.

I.  PROCEDURAL HISTORY

Petitioner is in custody of the California Department of Corrections and Rehabilitation serving an indeterminate sentence of 30 years-to-life related to his 1993 conviction for murder. In this action, Petitioner does not challenge his conviction or sentence, but rather the results of the disciplinary hearing resulting from a charge of possessing contraband. The punishment imposed after the hearing included 360 days loss of good time credit and 90 days lost commissary privileges.

Petitioner challenged the determination in state habeas petition filed in the Kings County Superior Court, which was denied on its merits. (Doc. 15, Ex. 2). His habeas petitions filed in the California Court of Appeal, Fifth Appellate District and later in the California Supreme Court, were likewise denied. (Doc. 15, Ex. 4; Doc. 15, Ex. 6)

## II.  FACTUAL BACKGROUND

On November 11, 2010, while Petitioner was incarcerated at California State Prison, Corcoran, California, his cell was searched as part of a routine "mass cell search." (Doc. 15, Ex. 7, p. 2). After Petitioner and his cellmate had been removed from the cell, a thorough search took place, during which correctional officers discovered what appeared to be an "inmate manufactured weapon." (Id., p. 3). The item consisted of a toothbrush handle holding a metal stock that had been sharpened to a point. (Id.). The weapon measured approximately 5.5 inches in length. (Id.). The correctional officer notified his superiors immediately. (Id.).

Petitioner was charged, by a Rules Violation Report dated November 11, 2010, with possession of a weapon in violation of section 3006(a) of the California Code of Regulations. (Doc. 15, Ex. 7).[1] Following a disciplinary hearing held on January 31, 2011, Petitioner was found to have violated the prison disciplinary rules and was sanctioned with the loss of 360 days credit and 90 days loss of canteen privileges. (Id., p. 2).

The Senior Hearing Officer, who presided at the hearing and made the final determination of guilt, relied upon the investigative employee's report and Petitioner's partial admission of guilt. (Id., p. 6). Petitioner's written and oral statement at the hearing stated that, "They did find the item but it was used as a screw driver. This was mine, it was in my locker. I was assigned to the top bunk but since I was in the cell first I was on the bottom bunk and all my stuff was on the bottom locker. I'm saying this was a screw driver only and that's what I used if for; nothing else." (Id., p. 7). The investigative report contained the testimony of Correctional Officers Rosel, Gonzales, and Delacruz,

---

[1] Under Cal. Code Regs. Titl. 15, sec. 3006(a), inmates are prohibited from possessing or having under their control any weapons, contraband, or dangerous property. "Dangerous" contraband are materials or substances altered from their original manufactured state or purpose that could be fashioned into a weapon, including plastic, sharpened objects, and other tools not authorized to be in the inmate's possession. (Cal. Code Regs. Titl 15, sec. 3000).

and the testimony of seven inmates. (Id.). All seven inmates confirmed that the item found belonged to Petitioner. (Id.).

**III.    DISCUSSION**

      A.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged disciplinary conviction was adjudicated in the Kings County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

      B.    Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts

3

that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams, 529 U.S. at 405-406 (2000).

In Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1410-1411 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 131 S.Ct. at 787-788.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500. A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id.; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding

that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

IV.     **Review of Petitioner's Claims**

In this action, Petitioner alleges: (1) he was denied federal due process rights to have material witnesses and evidence presented at his disciplinary hearing; and (2) that the hearing officer's findings are not supported by "some evidence" in the record. (Doc. 1, pp. 14-15). Because the two claims are closely related, they will be analyzed together.

A.   Exclusion of Evidence and Witnesses

Petitioner contends that he was denied his federal due process rights when he was not allowed to present material witnesses, specifically Correctional Officers Cano and Halsey, and when he was not given access to the "cell search receipt." (Doc. 1, p. 15). Petitioner also contends that the record does not contain "some evidence" supporting the findings of the SRO. Both contentions are without merit.

1. The Superior Court's Opinion.

The only "reasoned decision" available for this Court's review is that of the Superior Court in denying Petitioner's habeas petition. That court denied Petitioner's claims, in pertinent part, as follows:

> IT IS HEREBY ORDERED, the petition is denied.  (People v. Duvall (1995) 9 Cal. 4th 464, 474.)  It appears from the record that the Senior Hearing Officer's finding of guilt in connection with Rules Violation Report, Log. No. 3A-10-11-03, is supported by "some evidence" in the record.  Although Petitioner has alleged an alternate explanation for his possession of the item declared to be a "weapon", it is not appropriate for this court to reweigh the evidence and/or conduct an independent review of witness credibility.  (In re Zepeda (2006) 141 Cal.App.4th 1493, 1496.)

(Doc. 15, Ex. 2).

2. Federal Standard

Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be diminished by the needs and objectives of the institutional environment. Wolff v. McDonnell, 418 U.S. 539, 555 (1974). Prison disciplinary proceedings are not part of a criminal prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings. Id. at 556. Thus, a prisoner's

due process rights are moderated by the "legitimate institutional needs" of a prison. Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989), citing Superintendent, etc. v. Hill, 472 U.S. 445, 454-455, 105 S. Ct. 2768 (1984).

However, when a prison disciplinary proceeding may result in the loss of good time credits, due process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563-567.

Thus, an inmate charged with a disciplinary offense has a right to a hearing at which he may "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Wolff, 418 U.S. at 566. See also Ponte v. Real, 471 U.S. 491, 495 (1985). The right to call witnesses is subject to the "mutual accommodation between institutional needs and objectives and the provisions of the Constitution." Baxter v. Palmigiano, 425 U.S. 308, 321 (1976) (citing Wolff, 418 U.S. at 556). See also Serrano v. Francis, 345 F.3d 1071, 1077 (9th Cir.2003); Bostic v. Carlson, 884 F.2d at 1271. "Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." Wolff, 418 U.S. at 566. Prison officials may, but are not required to, explain their reasons limiting an inmate's efforts to defend himself. Ponte, 471 U.S. at 497, 105 S.Ct. 2192. Should prison officials refuse to call a witness, they should explain their reasons in disciplinary proceedings or later in court proceedings. Id.; see also Bostic, 884 F.2d at 1274 (the burden is on prison officials to provide justifications for the refusal to allow witnesses). As long as those reasons "are logically related to preventing undue hazards to 'institutional safety or correctional goals,' the explanation should meet the due process requirements as outlined in Wolff." Ponte, 471 U.S. at 497. However, as a general rule, inmates "have no constitutional right to confront and cross-examine adverse witnesses" in prison disciplinary

hearings. Id. at 510 (Marshall, J., dissenting). See also Baxter v. Palmigiano, 425 U.S. 308, 322–23 (1976)

In addition, due process requires that the decision be supported by "some evidence." Hill, 472 U.S. at 455, citing United States ex rel. Vatauer v. Commissioner of Immigration, 273 U.S. 103, 106 (1927).

> We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S., at 106, 47 S.Ct., at 304. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. See ibid.; United States ex rel. Tisi v. Tod, 264 U.S. 131, 133–134, 44 S.Ct. 260, 260–261, 68 L.Ed. 590 (1924); Willis v. Ciccone, 506 F.2d 1011, 1018 (C.A.8 1974).

Superintendent v. Hill, 472 U.S. at 455–56.

Thus, a finding of guilt cannot be "without support" or "arbitrary." Id. at 457. The "some evidence" standard is "minimally stringent," and a decision must be upheld if there is any reliable evidence in the record that could support the conclusion reached by the fact finder. Powell v. Gomez, 33 F.3d 39, 40 (9th Cir.1994) (citing Hill, 472 U.S. at 455–56 and Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987)). See also Burnsworth v. Gunderson, 179 F.3d 771, 773 (9th Cir.1999); Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir.1987).  The Hill Court provided justification for this less demanding standard as follows:

> We decline to adopt a more stringent evidentiary standard as a constitutional requirement. Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. [ ] The fundamental fairness guaranteed by the Due Process Clause does not require the courts to set aside decisions of prison administrators that have some basis in fact. [ ] Revocation of good time credits is not comparable to a criminal conviction, [ ] and neither the amount of evidence necessary to support such a conviction, [ ] nor any other standard greater than some evidence applies in this context.

Hill, 472 U.S. at 456 [citations omitted].

"The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." Hill, at 457.  Even where the evidence as in Hill

7

"might be characterized as meager," if "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary," those findings must be upheld. Id. Therefore, if the procedures outlined above are afforded to a prisoner, and "some evidence" supports the decision of the hearing officer decision, the requirements of due process are met. Hill, 472 U.S. at 455; Bostic v. Carlson, 884 F.2d at 1269–1270.

This standard was further clarified in In re Zepeda (2006) 141 Cal.App.4th 1493. In Zepeda, the court reiterated that the standards that apply with respect to disciplinary proceedings are significantly more lenient than those applied with respect to criminal convictions. (Id. at p. 1499.) "Implicit in the 'some evidence' standard of review is the recognition that due process requirements imposed by the federal constitution do not authorize courts to reverse prison disciplinary actions simply because, in the reviewing court's view, there is a realistic possibility the prisoner being disciplined is not guilty of the charged infraction." (Id. at p. 1498.) "Thus, to withstand court scrutiny for federal due process purposes, there is simply no requirement that the evidence 'logically precludes any conclusion but the one reached by the disciplinary [official].' ... Rather, all that is required is" "some evidence from which the conclusion of the [official] could be deduced."" (In re Zepeda, supra, at p. 1499, citing to Superintendent v. Hill, supra, at p. 456.)

   3. Analysis.

Initially, Petitioner argues that he was denied due process when the hearing officer refused to allow him to call as witnesses two correctional officers, Cano and Halsey. In the petition, Petitioner contends that he wanted these two officers to testify because "each continued to express the opinion that the item discovered wasn't a weapon." (Doc. 1, p. 11). Although Petitioner submitted written questions for both officers, the investigative employee deemed the questions irrelevant because neither officer was mentioned in the reporting officer's initial report and neither officer was part of the team of employees who discovered the weapon. (Doc. 15, Ex. 7, p. 9). Petitioner also requested a copy of the cell search receipt; however, the investigative employee indicated that no copy of the receipt could be found. (Id.).

It appears that Petitioner wished to have Cano and Halsey express their personal opinions that

the item in question was a screwdriver rather than an actual weapon. However, as the investigative employee noted, neither officer was involved in the incident and neither was a percipient witness to the events adjudicated at the disciplinary hearing. Accordingly, the determination that their testimony would be irrelevant is reasonable. The mere fact that these officers had their own personal opinions that the item was not a weapon was simply that, i.e., their opinion.

By contrast, the hearing officer's responsibility was to adjudicate the facts and apply the regulatory definition of "weapon" and "contraband" to those facts. The fact that Petitioner has an alternate theory as to the *potential* use of the item as a screwdriver rather than as a weapon, does not diminish the probative value of the item itself as an obvious weapon, i.e., an item "altered from [its] original manufactured state or purpose that could be fashioned into a weapon, including plastic, sharpened objects, and other tools not authorized to be in the inmate's possession." (Cal. Code Regs. Titl 15, sec. 3000). Thus, even if the item were used only as a screwdriver, it still fit § 3000's definition of a prohibited item. Opinions by correctional officers that are contrary to the Regulation's definition are not probative of whether the item in question belonged to Petitioner and fit the definition of a prohibited item. Thus, the hearing officer did not err in excluding this evidence.

Petitioner's contention that the SRO's findings were not supported by "some evidence" is specious. Petitioner acknowledged the item belonged to him. Thus, the only issue was whether the item fit the definition of a prohibited item under § 3006(a); as discussed above, it clearly did. Petitioner's defense, i.e., that he did not intend or use the item as a weapon, but as a screwdriver, does not make the item permissible or take it outside the definition of a weapon.[2] Section 3006(a) does not include a mens rea showing; rather, possession of contraband and weapons is strictly prohibited, regardless of the inmate's mental state regarding how he intends to use the contraband or weapon. Here, the record demonstrates that the item in question belonged to Petitioner and that it fit the

---

[2] For example, if Petitioner was found in possession of a butcher knife, the fact that he intended to use it only to cut up his food during meals would not make the item any less a weapon.

9

definition of items prohibited under § 3006(a).  Thus, the hearing officer's findings were supported by "some evidence" and Petitioner's claim of a due process violation under <u>Hill</u> should be rejected.[3]

## **RECOMMENDATION**

Accordingly, the Court **RECOMMENDS** that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1), be **DENIED**.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  **Within 21 days** after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be served and filed **within 10 days** (plus three days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **August 6, 2015**                            **/s/ Jennifer L. Thurston**
                                                                    UNITED STATES MAGISTRATE JUDGE

---

[3] Although neither the hearing officer nor the state courts expressly addressed the question of the missing cell search receipt, the Court concludes that the error, if any, in not locating and introducing such a receipt at the disciplinary hearing was harmless under <u>Brecht</u>, 507 U.S. at 637–38, because it did not have a "substantial and injurious effect" on the outcome of the hearing.  Petitioner never expressly articulated why this particular document would be relevant to his defense.  Respondent surmises that appliances found in Petitioner's cell and listed on the receipt would have been used by Petitioner to bolster his claim that he was a "fix it" person, thus supporting his contention that the item seized was intended to be used as a screwdriver. (Doc. 15, p. 9).  However, as mentioned, Petitioner's intent is irrelevant.  Moreover, as Respondent notes, the hearing officer was aware of Petitioner's contention and the discovery of items that could have been repaired by Petitioner would not have altered the legitimacy of the findings under § 3006(a).  Accordingly, any error was harmless under <u>Brecht</u>.